IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


CLARENCE EDWARD WALLESKE,
      Petitioner,

vs.                                                    Case No. 1:08cv16/MMP/EMT

EDWIN G. BUSS,[1]
      Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (*see* doc. 39; doc. 15, exhibits).  Petitioner filed a reply (doc. 40).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case were previously established by the court in its order denying Respondent's motion to dismiss (*see* docs. 15, 20, 35).  The procedural history is also established by the state court record (*see* doc. 15, exhibits).[2]  Petitioner

---

[1] Edwin G. Buss succeeded Walter A. McNeil as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted by Respondent (doc. 15).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number that appears at the bottom right of the page.

was charged in the Circuit Court in and for Levy County, Florida, with three counts of lewd or lascivious battery committed on a child under 16 years of age (Counts I, II, III), one count of lewd or lascivious molestation committed on a child 12 or older but under 16 (Count IV), two counts of lewd or lascivious exhibition (Counts V, VI), and two counts of showing obscene material to a minor (Counts VII, VIII) (Ex. A).  On June 22, 2005, Petitioner (who was represented by counsel) and the State entered a written plea agreement ("Plea Agreement"), pursuant to which Petitioner agreed to enter a plea of nolo contendere to Counts II, IV, V, VII, and VIII, in exchange for the State's agreement not to prosecute Counts I, III, and VI (Ex. B).  The parties further agreed that Petitioner would be sentenced to 25 years of imprisonment in the Florida Department of Corrections ("DOC"), followed by 5 years of "sex offender probation" with special conditions, and he would be designated a sexual offender (*id.*).  The parties additionally agreed Petitioner would receive pre-sentence credit of 463 days, and the sentence would run concurrently with the sentence he was serving in the State of Indiana (*id.*).  The judge accepted the plea (*see* Ex. B), and on June 22, 2005, adjudicated Petitioner guilty on Counts II, IV, V, VII, and VIII, sentenced him to 15 years of imprisonment on Count II, a consecutive term of 10 years of imprisonment on Count IV, a concurrent term of 5 years of imprisonment on Count V (for a total term of imprisonment of 25 years), and a 5-year term of sex offender probation on Counts VII and VIII, (Exs. B, C).  Petitioner received pre-sentence credit of 463 days (Ex. C).  He was also declared a sexual offender (*id.*).  On June 28, 2005, Petitioner, through counsel, filed a motion to withdraw his plea (*see* Ex. L, attached exhibits F, G).  In an order rendered July 8, 2005, Petitioner's counsel was permitted to withdraw, and conflict counsel was appointed (*see* Ex. L, attached exhibit H).

On March 27, 2006, Petitioner filed a pro se motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (*see* Ex. L, attached exhibit J).  Apparently, the state circuit court dismissed the motion as facially insufficient, without prejudice to Petitioner's filing a facially sufficient motion (*see* doc. 20).

On August 8, 2006, Petitioner filed a second Rule 3.850 motion (Ex. D).  On November 22, 2006, the state circuit court summarily denied the motion (Ex. E).  Petitioner appealed the decision to the First DCA (Ex. F).  On June 13, 2007, the First DCA affirmed the decision per curiam without

written opinion, with the mandate issuing September 27, 2007 (Exs. H, K). <u>Walleske v. State</u>, 963 So. 2d 706 (Fla. 1st DCA 2007) (Table).

On December 21, 2006, while the appeal of Petitioner's second Rule 3.850 motion was pending, the state circuit court issued an order dismissing Petitioner's motion to withdraw his plea as moot, on the ground that Petitioner's reasons for seeking to set aside his plea were presented in his second Rule 3.850 motion and denied by the court (*see* Ex. L, attached exhibit J).

On October 22, 2007, Petitioner filed a petition for belated appeal in the First DCA (Ex. L). The First DCA issued an order granting Petitioner until November 30, 2007, to file an amended petition curing the pleading deficiency noted in its order (Ex. M). Petitioner complied with the order (Ex. N). The First DCA denied the petition on the merits on December 17, 2007 (Ex. O). <u>Walleske v. State</u>, 970 So. 2d 883 (Fla. 1st DCA 2007).

Petitioner filed the instant federal habeas action on January 8, 2008 (doc. 1). The court previously determined the petition is timely (*see* docs. 15, 20, 35).

II.     STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, § 2254(d) provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (2006).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring).  The federal habeas court "determining whether [it] should overturn the state courts' rejection of the claim at issue" should "review the highest state court decision disposing of the claim."  <u>Harvey v. Warden, Union Corr. Inst.</u>, 629 F.3d 1228, 1237 (11th Cir. 2011); <i>see</i> <u>Knowles v. Mirzayance</u>, — U.S.—, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

Employing the <u>Williams</u> framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  Dicta in opinions is not controlling.  <u>Thaler v. Haynes</u>, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); <u>Bowles v. Sec'y for Dep't of Corr.</u>, 608 F.3d 1313, 1315 (11th Cir. 2010).  A federal court of appeals decision cannot clearly establish federal law for § 2254 purposes, even if its holding is directly on point.  <u>Bowles</u>, 608 F.3d at 1316 (citing <u>Renico v. Lett</u>, — U.S. —, 130 S. Ct. 1855, 1866, 176 L. Ed. 2d 678 (2010)).

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

After identifying the governing legal principle, the court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  To be entitled to deference, the state court decision need not cite to Supreme Court case law.  As the Supreme Court clarified:  "Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  See Panetti v. Quarterman, 551 U.S. 930, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court.  Williams, 529 U.S. at 409; see Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  A state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. Knowles, 129 S. Ct. at 1419.  Notably, even a state court's incorrect or erroneous application of clearly established law will not warrant federal habeas relief unless it is also objectively unreasonable.  See Schriro v. Landrigan, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially

higher threshold."); Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.   See Gill v. Mecusker,  633 F.3d 1272, 1287 (11th Cir. 2011) (citing Harrington, 131 S. Ct. at 786).  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 131 S. Ct. at 786; see also Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the Supreme Court applies an objective test.  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  See Gill, 633 F.3d at 1292.

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the

petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see, e.g.,* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(2) interact in the context of fact-based challenges to state court adjudications. Cave v. Sec'y for Dep't of Corr., — F.3d. —, 2011 WL 1365021 (11th Cir. Apr. 12, 2011). However, in a recent Eleventh Circuit decision the court declined to grant habeas relief under § 2254(d)(2), in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." Gill, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti, 551 U.S. at 953. The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786.

III.   EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving

---

[4]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i)  there is an absence of available State corrective process; or
       (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982). In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. Id., 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal

habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . .  We

---

[5] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. Id. at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." Id.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. See O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. See Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims

---

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424-25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate. *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

Id.

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

A.     Ground One:  "Petitioner denied [sic] his constitutional right under the Due Process Clause, in accordance to [sic] the Interstate Agreement on Detainers."

Petitioner asserts he was incarcerated in the Indiana Department of Corrections when he was served with an arrest warrant issued by the Levy County Circuit Court on March 15, 2004 (doc. 1 at 5).[8]  He states the Indiana State Police served the warrant on March 16, 2004, and lodged a detainer (id. at 5–6).  Petitioner states on September 14, 2004, he executed an Inmate's Notice of Place of Imprisonment and Request for Final Disposition of Indictment ("Request for Final Disposition"), which was mailed to the Office of the State Attorney for the Eighth Judicial Circuit

_____

[8] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

on September 15, 2004 (*id.* at 6, Exhibit. F).  Petitioner contends the Request for Final Disposition triggered the speedy trial requirements of the Interstate Agreement on Detainers ("IAD"), enacted into Florida law at Fla. Stat. § 941.45, pursuant to which he was required to be brought to trial within 180 days (*id.* at 6–8).  Petitioner states he was transported from Indiana to Florida on March 3, 2005 (*id.* at 8).  He states he asserted his speedy trial rights at his first appearance, but the trial judge failed to set a trial date within nine days (the period allegedly remaining on the 180-day speedy trial period) and instead set a pre-trial hearing date outside the 180-day deadline (*id.*).  Petitioner contends the charging document was subject to dismissal, because he was not brought to trial within the speedy trial period (*id.*).  He states he raised this claim in his post-conviction motion and motion for belated appeal (*id.* at 5).

Respondent contends Petitioner waived his right to a speedy trial by entering a nolo contendere plea and waiving his right to directly appeal his judgment and sentence (doc. 39 at 17).  Further, because Petitioner chose to forgo his right of review on appeal, he defaulted his IAD claim and is thus barred from raising his claim on federal habeas review (*id.*).  Respondent additionally contends notwithstanding the procedural bar, Petitioner failed to show that the state court's adjudication of his claim (which he asserted in his second Rule 3.850 motion) was contrary to or an unreasonable application of clearly established federal law (*id.* at 18–20).

Upon review of the state court record, the undersigned rejects Respondent's contention that Petitioner defaulted his IAD claim and is thus barred from raising his claim on federal habeas.  In Ground 1 of Petitioner's second Rule 3.850 motion, he raised the same claim he presents here, arguing that the trial court's failure to bring him to trial within the 180-day period set forth in the IAD violated his due process rights guaranteed by the Fifth and Fourteenth Amendments and the Florida Constitution (Ex. D at 2–3).  The state circuit court adjudicated the claim on the merits, as discussed *infra*, and gave no indication it was relying on a state procedural rule of waiver or default.  Therefore, the undersigned concludes Petitioner's claim is not procedurally barred.

1.      Clearly Established Federal Law

The IAD is a compact among forty-eight States, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States.  *See* <u>Carchman v. Nash</u>, 473 U.S. 716, 719, 105 S. Ct. 3401, 87 L. Ed. 2d 516 (1985).  The IAD was drafted in 1956 by the Council of State Governments and

was adopted in 1973 by the State of Florida, where it is now codified as Fla. Stat. § 941.45, *et seq.*. The IAD is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction.  *See* Carchman, 473 U.S. at 719 (citing Cuyler v. Adams, 449 U.S. 433, 438–42, 101 S. Ct. 703, 66 L. Ed. 2d 641 (1981)). The purpose of the IAD is "to encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints."  *Id.* at 720 (citing Art. I of IAD).

To achieve this purpose, Art. III of the IAD establishes a procedure by which a prisoner incarcerated in one party State (the sending State) may demand the speedy disposition of "any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner" by another party State (the receiving State).  Carchman, 473 U.S. at 720. Specifically, Art. III requires the warden to inform the prisoner that a detainer has been lodged against him and that he may request final disposition of the indictment, information, or complaint upon which the detainer is based.  If the prisoner makes such a request, the warden must forward it, together with a certificate providing certain information about the prisoner's terms of confinement, to the appropriate prosecuting official and court of the receiving State.  *Id.* at 721.  The authorities in the receiving State then must bring the prisoner to trial within 180 days, absent good cause shown, or the court must dismiss the indictment, information, or complaint with prejudice, and the detainer will cease to be of any force or effect.  *Id.*  The 180-day time period does not commence until the prisoner's disposition request had actually been delivered to the court and prosecutor of the jurisdiction that lodged the detainer against him.  *See* Fex v. Michigan, 507 U.S. 43, 52, 113 S. Ct. 1085, 122 L. Ed. 2d 406 (1993).

Article IV of the IAD "provides the means by which a prosecutor who has lodged a detainer against a prisoner in another State can secure the prisoner's presence for disposition of the outstanding charges.  Once he has filed a detainer against the prisoner, the prosecutor can have him made available. . . ." United States v. Mauro, 436 U.S. 340, 351–52, 98 S. Ct. 1834, 1843, 56 L. Ed. 2d 329 (1978).  "Two important limitations . . . are placed on a prosecuting authority once it has obtained the presence of a prisoner pursuant to Art. IV." *Id.*, 436 U.S. at 352.  First, Article IV(c) provides that, "[i]n respect of any proceeding made possible by this Article, trial shall be

commenced within one hundred twenty days of the arrival of the prisoner in the receiving state. . . ." *Id.* (quotation omitted). Second, Article IV(e) provides, "If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment . . . such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." *Id.* at 352–53 (quotation omitted). A state court's failure to observe the 120-day speedy trial rule of the IAD is not cognizable under the federal habeas corpus statute when the defendant registered no objection to the trial date at time it was set and suffered no prejudice attributable to the delayed commencement. *See* Reed v. Farley, 512 U.S. 339, 352, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994).

      2.    Federal Review of State Court Decision

As previously noted, Petitioner presented this claim in Ground 1 of his second Rule 3.850 motion (Ex. D at 2–3). The state circuit court adjudicated Petitioner's claim as follows:

> 4. Defendant's claim that the State failed to bring him to trial within the requisite period of time under the IADA is without merit. A defendant, imprisoned in another state, who requests a final disposition on "any untried indictment, information, or complaint" pending in this state, and who meets the filing requirements of 941.45, Fla. Stat., is entitled to be brought to trial within 180 days after the request is received by the prosecuting authority in this State. However, when Defendant filed his request, there was no pending "untried indictment, information, or complaint." The detainer at issue was lodged pursuant to an arrest warrant filed in the above-captioned case. *See* Arrest Warrant. "An arrest warrant is not an 'untried indictment, information, or complaint' so as to trigger compliance with section 941.45, . . . the Interstate Agreement on Detainers statute." Taylor v. State, 582 So. 2d 152, 152 (Fla. 4th DCA 1991) (citing U.S. v. Bottoms, 755 F.2d 1349, 1350 (9th Cir. 1985)). Defendant's request for a final disposition was prematurely filed. The request did not trigger the 180 day period in which the State would be required to bring him to trial.
>
> 5. Defendant was "brought to trial" within 120 days of his arrival in the state, pursuant to section 941.45, Fla. Stat. The Levy County Sheriff's Office arrested Defendant in Indiana on the above captioned case on March 3, 2005. *See* Arrest Report. The State filed the information in the above-captioned case on March 8, 2005. *See* Information. Defendant then entered his plea and was sentenced on June 22, 2005. *See* Judgment and Sentence. The disposition in the above-captioned case did take place within the time required under the IADA.

(Ex. E at 9–10). The First DCA affirmed the decision without written opinion (Ex. H).

Although the First DCA's written opinion did not provide reasoning for its affirmance on this issue, this court presumes that the First DCA's decision affirms the reasoning, as well as the judgment of the lower court. "'Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.'" Sweet v. Sec'y Dept. of Corrs., 467 F.3d 1311, 1316–17 (11th Cir. 2006) (quoting Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991)); *see also* Harmon v. Barton, 894 F.2d 1268, 1273 (11th Cir. 1990) (noting that the "clear inference" to be drawn from a per curiam affirmance without written opinion is that the appellate court "accepted not only the judgment but the reasoning of the trial court.").

Initially, Petitioner has failed to show by clear and convincing evidence that the state court's factual findings are incorrect. Furthermore, the findings are well supported by the state court record. Therefore, the court presumes the following findings are correct: (1) the detainer at issue was lodged pursuant to an arrest warrant; (2) Florida authorities arrested Petitioner in Indiana on March 3, 2005; (3) the Florida prosecutor filed the information on March 8, 2005; (4) Petitioner entered his plea and was sentenced on June 22, 2005; and (5) Petitioner's sentencing occurred within 120 days of his arrival in the state. In light of these findings, the state court's determination that there was no violation of Article IV of the IAD was reasonable. Additionally, the state court's determination that the detainer based upon the arrest warrant was insufficient to trigger Article III of the IAD is supported by state and federal law. *See* United States v. Bottoms, 755 F.2d 1349, 1349–50 (9th Cir. 1985) (speedy trial provision of IAD did not apply to defendant where detainer filed against him while he was in state custody was based on an arrest warrant, not an untried indictment, information or complaint); Churchwell v. State, 44 So. 3d 645 (Fla. 2d DCA 2010) (same); Taylor, 582 So. 2d 152 (Fla. 4th DCA 1991) (same).

For these reasons, the undersigned concludes Petitioner has failed to demonstrate that the state court's adjudication of his related IAD and due process claims was based upon an unreasonable determination of the facts, or that the decision was contrary to or an unreasonable application of any holding of the Supreme Court. Therefore, he is not entitled to federal habeas relief on Ground One.

    B.    Ground Two: "Ineffective assistance of trial counsel for not filing motion to dismiss information pursuant to the 180 speedy trial right."

Petitioner states he attended his first appearance in Florida on March 4, 2005, at which time the court appointed counsel to represent him (doc. 1 at 5).  Petitioner states during the first appearance, he informed the court of the facts underlying his presence in Florida, thereby asserting his speedy trial rights under the IAD, but the court failed to set a trial date (*id.* at 10).  Petitioner states he met his defense attorney, Ms. Phaladya Dean, for the first time at a pre-trial hearing on April 7, 2005, at which time he instructed her to file a motion to dismiss the information, based upon the IAD violation, or demand that trial be set (*id.* at 9–11).  He states Attorney Dean informed him that she knew nothing about the IAD, she was not paid enough to investigate his case or prepare for trial, and she would only pursue a plea deal for him (*id.*).  Petitioner states he refused to discuss a plea with Attorney Dean and repeatedly instructed her to file a motion to dismiss or demand a trial date (*id.*).  Petitioner claims Attorney Dean's failure to file a motion to dismiss or demand a trial date constituted ineffective assistance (*id.* at 9–12).  He additionally asserts counsel's failure to follow his instructions caused him to enter a nolo contendere plea "under duress" and involuntarily (*id.* at 12–13).  He state he filed a timely request to withdraw his plea based upon Attorney Dean's ineffective assistance, and conflict counsel, Attorney Kaye, was appointed to represent him (*id.*).

Respondent concedes Petitioner exhausted this issue by raising it in his Rule 3.850 motion and on appeal of the state circuit court's denial of the motion (doc. 39 at 22).  Respondent contends Petitioner failed to demonstrate that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 22–29).

> 1.     Clearly Established Federal Law

Defense counsel may effectively waive a defendant's right to be brought to trial within 180-day period specified under the IAD, by agreeing to a trial date outside that time period, even without express consent by the defendant.  *See* New York v. Hill, 528 U.S. 110, 115, 120 S. Ct. 659, 145 L. Ed. 2d 560 (2000).  Absent a demonstration of counsel's ineffectiveness, counsel's word on such matters is "the last."  *Id.*

The two components of an ineffective assistance of counsel claim are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other. Strickland v. Washington, 466 U.S. 668, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697;

Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." *See* Strickland, 466 U.S. at 691. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769–70, 90 S.Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56–57, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985) (quoting McMann, 397 U.S. at 771). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991). Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990). The Eleventh Circuit has commented that "[t]he right to competent plea bargain advise is at best a

privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer."  Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).  "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial."  *Id.*  This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant.  *Id.*  Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea.  *Id.* at 1509.

To meet the prejudice prong of the Strickland standard in a plea situation, Petitioner must establish that prove that "counsel's constitutionally ineffective performance affected the outcome of the plea process."  Hill, 474 U.S. at 59.  Often this analysis hinges upon whether eradication of the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different.  *Id.* at 59–60.  While counsel can be deemed ineffective under Strickland for failing to provide proper advice during the plea process, Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.  *See* Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991).  A conclusory, after-the-fact statement that Petitioner would not have pled guilty, without more, is insufficient to establish prejudice under Strickland.  *See* Diaz, 930 F.2d at 835; *see also* Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (though Coulter evidenced, through his counteroffer to the state, a willingness to enter into a plea agreement, he offered no further proof to show that he would have accepted the state's plea offer of life without parole absent his lawyers' alleged errors; therefore, Coulter failed to establish any prejudice stemming from counsel's alleged deficient performance); Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and

fact.  <u>Strickland</u>, 466 U.S. at 698, 104 S. Ct. at 2070; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).

### 2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground 2 in his Rule 3.850 motion (Ex. D).  The state circuit court summarily denied the claim (Ex. E).  In its written order, the state circuit court identified the <u>Strickland</u> standard as the controlling legal standard (<i>id.</i>).  The court found as fact that the detainer upon which Petitioner filed a request for final disposition was based on an arrest warrant, not an untried indictment, information, or complaint (<i>id.</i>).  The court additionally found that the State brought Petitioner to disposition within 120 days of his arrival in the State (<i>id.</i>).  Based upon these findings, the court determined that the State met the appropriate time requirements under the IAD; therefore, defense counsel did not perform ineffectively by failing to raise the IAD issue (<i>id.</i>).

Petitioner included this issue in his initial brief on appeal of the circuit court's denial of his motion (Ex. F).  The First DCA affirmed the decision without written opinion (Ex. H).

Initially, the state court correctly identified the <u>Strickland</u> standard as the controlling legal standard (Ex. E at 8–9).  Therefore, Petitioner cannot show that the state court decision was contrary to Supreme Court precedent.

Additionally, Petitioner failed to demonstrate, by clear and convincing evidence, that the state court's factual findings were incorrect.  Therefore, this court presumes that the following facts are correct:  (1) the detainer upon which Petitioner filed a request for final disposition was based upon an arrest warrant, and (2) the State brought Petitioner to disposition within 120 days of his arrival in the State.

The remaining question is whether Petitioner has established the state court unreasonably applied <u>Strickland</u>.  The state court's determination that defense counsel did not err in raising an IAD issue with respect to the 180-day provisions of Article III was based upon its conclusion that the arrest warrant was not "an untried indictment, information, or complaint" and, therefore, did not trigger the 180-day provisions of Article III of the IAD.  As previously noted, this conclusion is supported by Florida and federal law.  <i>See</i> <u>Bottoms</u>, 755 F.2d at 1349–50; <u>Churchwell</u>, 44 So. 3d at 645; <u>Taylor</u>, 582 So. 2d at 152.  Furthermore, the state court's determination that defense counsel did not err in failing to raise an IAD issue with respect to the 120-day provision set forth in Article

IV was reasonable, in light of the fact that Petitioner was arrested by Florida authorities on March 3, 2005, the Florida prosecutor filed the information on March 8, 2005, and Petitioner entered his plea and was sentenced on June 22, 2005.

Petitioner has failed to show that the state court's adjudication of his ineffective assistance of counsel claim was based upon an unreasonable determination of the facts, or that its decision was contrary to or an unreasonable application of Strickland. Therefore, he is not entitled to federal habeas relief on Ground Two.

C.      Ground Three:  "Ineffective assistance of appointed conflict attorney for not acting in good faith or with diligence."

Petitioner states the trial court granted his motion to withdraw his plea and appointed conflict counsel, Attorney Kaye, on July 6, 2005 (doc. 1 at 14). Petitioner states Attorney Kaye failed to contact him to discuss the status of his case and his options (*id.* at 14–21). Petitioner states he was prejudiced by counsel's conduct because he was unaware of the status of his case and was forced to file his two Rule 3.850 motions without counsel's assistance (*id.*).[9]

Respondent contends Petitioner failed to properly exhaust his claims in state court (doc. 39 at 30). Respondent argues Petitioner did not present this claim in either of his Rule 3.850 motions (*id.*). Additionally, although Petitioner asserts he raised this claim in his petition for belated appeal, Respondent contends belated appeal proceedings are not the proper forum for presenting such claims under Florida law (*id.*). Respondent further argues the First DCA's denial of the petition for belated appeal was not an adjudication of the merits of the instant claim (*id.*). Respondent contends any attempt to return to state court to exhaust this claim would be barred by state procedural rules (*id.*). Therefore, the claim should be denied as procedurally barred (*id.* at 31).

---

[9] The court summarizes Petitioner's claim as presented but notes that Petitioner's assertion that the trial court granted his motion to withdraw his plea is completely inaccurate. The record establishes that on June 28, 2005, Attorney Dean filed a motion to withdraw plea, referencing the grounds asserted by Petitioner in an inmate grievance sent directly by Petitioner to the court, and attaching the grievance (*see* Ex. L, attached exhibits F and G). The next day, Attorney Dean filed a motion to withdraw as counsel (*see id.*). In an ordered dated July 6, 2005, the trial court granted Attorney Dean's motion to withdraw as counsel and appointed Attorney Kaye as conflict counsel (*see* Ex. I, attached Docket Sheet; Ex. L, attached exhibit H). Contrary to Petitioner's assertion, the July 6 order did not grant the motion to withdraw his plea (*id.*). The trial court dismissed the motion to withdraw the plea in December of 2006, on the ground that the court had already rejected the underlying basis for the motion, that is, trial counsel's alleged ineffectiveness for failing to raise the IAD issues (raised in Petitioner's second Rule 3.850 motion). Petitioner has not shown that the court's disposition of the motion to withdraw the plea would have been any different if it had been addressed earlier.

The record demonstrates that Petitioner filed a petition for belated appeal of the state circuit court's order dismissing his motion to withdraw his plea (Ex. L).  In his petition, he argued he was brought to trial beyond the 180-day period required by the IAD (*id.* at 4–5).  He argued Attorney Dean refused to argue the IAD issue to the trial court, and when Petitioner attempted to do so, the judge "would turn the issue into a plea hearing" (*id.* at 5).  Petitioner further argued he did not want to enter a plea and filed a timely motion to withdraw his plea (*id.*).  Petitioner asserted the court granted the motion to withdraw the plea and appointed Attorney Kaye (*id.*).  He further asserted he was then transported back to Indiana (*id.* at 5–6).  Petitioner asserted he was unaware that Attorney Kaye had been appointed, and Attorney Kaye failed to contact him (*id.* at 6–7).  Petitioner argued his pro se motions for post-conviction relief should have been dismissed as a nullity, since he was represented by counsel (*id.* at 7).  Petitioner argued that the foregoing denied him his right to appeal (*id.* at 7–8).

The First DCA construed the petition for belated appeal as seeking a belated appeal of the judgment and sentence rendered on June 22, 2005, "rendition of which was postponed pending rendition of the lower tribunal's order disposing of the timely motion to withdraw plea" (Ex. M). The First DCA concluded that the petition was legally insufficient under Rule 9.141(c)(3)(F) of the Florida Rules of Appellate Procedure, in that it failed to set forth the specific acts sworn to by Petitioner that constituted the basis for entitlement to a belated appeal; specifically, the petition did not allege that Petitioner timely made a request of his counsel to proceed with an appeal, or to otherwise demonstrate that through no fault of Petitioner a timely appeal was not taken (*id.*).[10]  The court provided Petitioner an opportunity to file an amended petition curing the deficiency (*id.*).

Petitioner filed an amended petition, raising as Issue One the same issue he raises as Ground Three of the instant federal petition (Ex. N).  The First DCA denied the petition for belated appeal "on the merits" (Ex. O).

---

[10] Rule 9.141(c)(3) provides that the petition seeking belated appeal or alleging ineffective assistance of appellate counsel must recite "the specific acts sworn to by the petitioner . . . that constitute the alleged ineffective assistance of counsel or basis for entitlement to belated appeal . . ., including in the case of a petition for belated appeal whether the petitioner requested counsel to proceed with the appeal." Fla. R. App. P. 9.141(c)(3)(F).

The undersigned rejects Respondent's argument that the First DCA's decision was not an adjudication on the merits. The First DCA's decision expressly states it rejected Petitioner's claim on the merits, and there is no indication that that its decision was based upon a state procedural rule. Therefore, the decision was an "adjudication on the merits" under § 2254(d). *See* Childers v. Floyd, 642 F.3d 953, 968–69 (11th Cir. 2011) (citations omitted).[11]  In light of this conclusion, the court will determine whether Petitioner is entitled to relief under the AEDPA.

### 1.     Clearly Established Federal Law

In Roe v. Flores-Ortega, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000), the Supreme Court held that standard enunciated in Strickland v. Washington, 466 U.S. 668 (1984) is to be applied in evaluating a claim that counsel was constitutionally ineffective for failing to file a notice of appeal. With respect to the first prong of Strickland—whether counsel's representation fell below an objective standard of reasonableness—the Supreme Court reaffirmed that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Flores-Ortega, 528 U.S. at 477. The court went on to discuss the situation where the defendant does not make a specific request or instruction to file a notice of appeal:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate,

---

[11] Moreover, the court rejects Respondent's argument that Petitioner failed to raise his claim in the proper forum. Under Florida law, a claim that counsel rendered ineffective assistance with regard to an appeal is properly raised in a petition seeking belated appeal or alleging ineffective assistance of counsel. *See* Alexander v. State, 855 So.2d 243, 244 (Fla. 5th DCA 2003) (claim of ineffective assistance of appellate counsel must be raised in petition for belated appeal pursuant to Rule 9.141(c) of the Florida Rules of Appellate Procedure); York v. State, 891 So. 2d 569 (Fla. 2d DCA 2004) (granting belated appeal where petitioner filed petition pursuant to Rule 9.141(c) alleging ineffective assistance of appellate counsel and court agreed that appellate counsel was ineffective). Petitioner filed his state petition pursuant to Rule 9.141(c), which provides for the filing of petitions seeking belated appeal or alleging ineffective assistance of counsel (*see* Ex. L). Furthermore, Petitioner's petition seeking a belated appeal included allegations of ineffective assistance of counsel. Moreover, the appropriate remedy ordered by a state court granting a petition under Rule 9.141(c) is a belated appeal, *see* Fla. R. App. P. 9.141(5)(D), which is the remedy Petitioner sought in his state petition. *See* Santiago v. State, 962, So.2d 416 (Fla. 2d DCA 2007) (granting petition seeking belated appeal of conviction on basis of alleged ineffective assistance of appellate counsel and instructing trial court, within thirty days from issuance of mandate, to appoint appellate attorney to file brief limited to issue that appellate court determined should have been raised by counsel in first appeal); Barnes v. State, 932 So. 2d 589 (Fla. 5th DCA 2006) (appropriate remedy for petitioner's success on claim of ineffective assistance of appellate counsel was grant of belated appeal). Therefore, there is no basis to conclude that Petitioner's claim was barred by state procedural rules.

but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. *See supra*, at 1034 and this page. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance. That question lies at the heart of this case: Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?

Flores-Ortega, 528 U.S. at 478.

The Court rejected a bright-line rule that counsel must always consult with the defendant regarding an appeal. *Id.* at 480. Instead, the Court held:

. . . counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. *See* [Strickland, 466 U.S.] at 690, 104 S.Ct. 2052 (focusing on the totality of the circumstances). Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id.* at 480.

As to the prejudice prong, the Supreme Court held that to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, he would have timely appealed. *See* FloresOrtega, 528 U.S. at 484–86.

2.      Federal Review of State Court Decision

As previously discussed, under the "contrary to" prong of § 2254(d)(1), the state court need not cite federal law "so long as neither the reasoning nor the result of the state-court decision contradicts" the Supreme Court's precedents.  Early, 537 U.S. at 8.  Further, the difference between the state court's decision and the Supreme Court precedent must be more than slight; the state court decision must be "substantially different."  *See* Childers, 642 F.3d at 971 (citing Williams, 529 U.S. at 405).   An "unreasonable application" of federal law occurs when the "state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 413.  Therefore, a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree that the arguments or theories that supported or could have supported the state court's decision are inconsistent with the holding of a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786 (citation and internal quotation marks omitted); *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

In the instant case, Petitioner did not allege, either in the state court or this court, that he instructed Attorney Kaye to file an appeal; instead, he asserts Attorney Kaye failed to consult with him (*see* Ex. N at 6–7; doc. 1 at 14–21).  Therefore, Flores-Ortega dictates the court must proceed to the question of whether counsel's failure to consult with Petitioner constituted deficient performance.

The First DCA's denial of Petitioner's claim could have been based upon the argument that Attorney Kaye had no reason to think either (1) that a rational defendant would want to appeal, or (2) that Petitioner reasonably demonstrated he was interested in appealing.  Attorney Kaye would have no reason to think that a rational defendant would want to appeal in light of the following:  (1) Petitioner's only asserted grounds for withdrawing his plea were his vague assertions that Attorney Dean told him "a couple things which weren't true" and "talked [him] into" the plea (*see* Ex. N, attached exhibits F, H); (2) Petitioner's grounds for post-conviction relief were specific, namely, the alleged IAD violations and Attorney Dean's alleged ineffectiveness by failing to assert Petitioner's

rights under the IAD (*see* Ex. D at 2–3); (3) the state courts rejected Petitioner's claims of IAD violations and ineffective assistance of counsel with respect to Attorney Dean's representation during the plea process (*see* Exs. E, H, L, attached exhibit J); (4) Petitioner expressly waived his right to a direct appeal in the Plea Agreement (Ex. B at 19); and (5) Petitioner received the sentence he bargained for (*see* Exs. B, C).

Additionally, Petitioner does not allege he made any attempt to contact Attorney Kaye, even after Petitioner received a copy of the trial court's order dismissing his motion to withdraw plea (Petitioner states he received a copy of the order in October of 2007), which included Attorney Kaye's address.  Instead, Petitioner filed a pro se motion for belated appeal with the First DCA. This supports the argument that Attorney Kaye had no reason to think Petitioner was interested in appealing.

For the aforementioned reasons, fairminded jurists could disagree that the arguments or theories that could have supported the First DCA's decision are inconsistent with the holding of Flores-Ortega.  Therefore, Petitioner has failed to demonstrate that the state court decision was contrary to or an unreasonable application of clearly established federal law.[12]

V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

---

[12] To the extent Petitioner asserts Attorney Kaye's failure to consult with him deprived him of representation during the Rule 3.850 proceedings, he is not entitled to relief.  In Pennsylvania v. Finley, the Supreme Court held that criminal defendants have no federal constitutional right to counsel during post-conviction proceedings.  481 U.S. 551, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987).

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Edwin G. Buss is substituted for Walter A. McNeil as Respondent.

And it is respectfully **RECOMMENDED**:

1. That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 26<u>th</u> day of July 2011.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**